The opinion of the court was delivered by
Nicholls, C. J.
This suit is before us on an appeal from a judgment rendered by the District Court for the Parish of Orleans, refusing an application made to it, in the joint names of Edgar Tisdale and Edgar L. Davezac, Jr., to issue a mandamus against the Mayor and Common Council of the City of New Orleans, and the members of the Finance Committee of the said Council.
The allegations of the petition, upon which this demand was made (filed December 11, 1899,), were that relators were appointed as assistant clerk and stenographer, by the Recorder of the Fourth Recorder’s Court of the City of New Orleans, on the 1st of August, 3899, at an annual salary of one thousand dollars a year each, and that their said appointments were made by the said recorder, under and by virtue of the provisions of Act No. 174 of the acts of 1894, amending and re-enacting Section 47, of Act 20, of 1882, known as the charter of the City of New Orleans.
That, although the Common Council of the City of New Orleans *1641 did provide for the payment of their salaries in the budget of expenditures for the year 1899, as they were compelled to do so by the legislative act, and petitioners (relators) did sign the pay roll and receive their monthly salaries for the month of August, 1899, the Treasurer of the Oity of New Orleans had refused to pay them their salaries for the months of September, October, November and December of 1899, for the reason of the instructions that he received from the Mayor and members of the Finance Committee, and the members of' the Common Council of said city. That ever since their appointment to their respective positions they had performed the duties of their offices.
That the Mayor and the members of the Common Council of the City of New Orleans had, as the law provided, published and adopted the budget of expenditures for the said City of Neiw Orleans for the year of 1900, and had neglected and failed to budget for their salaries for the part of the said year that their position existed and continued according to law.
That by the illegal conduct, of the said Mayor and members of the Finance Committee, and the members of the Common Council, and their contempt and disrespect of the law, they were deprived of their legal rights to draw their monthly salaries as provided for by the legislative act, and as their names still appeared, and would appear, on the pay rolls of the said recorder’s court, and' their only and proper remedy in the premises was by this proceeding.
Their prayer was for an alternative writ of mandamus directed to the Mayor and members of the Common Council, and the members of the Finance Committee of the said Common Council, to compel them to comply with the law, the said Finance Committee as was. their duty to do to pass the monthly finance ordinances, directing the comptroller to warrant, and the treasurer of the City of New Orleans to pay them their monthly salaries for the months of September, October, November and December, 1899, as their names still appeared on the pay roll of the Fourth Recorder’s Court, and that the Mayor and Common Council be ordered and commanded to amend the said budget adopted by them for the year 1900, by placing the amounts of their respective salaries on the budget of expenditures for the said year 1900, or the part of the said year that their term of office existed, and that the defendants ho compelled to obey the legislative acts as well as the law on the subject, and for general and equitable relief *1642 and all and every relief the court was competent to grant in the premises, and for costs, and the reservation of all rights.
Defendants, after excepting that relators petition disclosed no cause of action, contingently answered that it was not the ministerial duty of the defendants to make the appropriations prayed for. Further answering' defendants said that the lion. Peter B. Clement, Recorder of the Fourth Recorder’s Court, appeared before a committee of the City Council some time during the month of October, 1899, and informed them that the relators herein had no work to do in his court; that their duties were merely nominal; that he had neither need nor use for them as assistant clerk and stenographer respectively of said court, and that his appointment of the relators to fill said positions wero n\ade not from any necessity of the public service, but simply in order, if possible, to spend the public moneys.
They also averred that they had adopted a budget of revenues and expenditures for the year 1900, a copy of which was made a part of their xejtum, and said budget was adopted on December 5th, 1899, and defendants averred that every dollar of the receipts had been appropriated to specific purposes, and that there remained no money from which defendants could make the appropriations asked for by the relators herein, and none of the appropriations made on said budget of 1900 could be set aside in any case withoht making parties to this proceedings, all parties interested in said appropriations.
In view of the premises, they prayed that relators’ demands be rejected, like writ of mandamus be refused, and the suit dismissed at relators’ costs.
The District Court set aside the alternative writ of mandamus and rendered judgment in favor of the defendants, rejecting relators’ demands at their costs, and the latter appealed.
The allegation of relators’ petition, in reference to their appointment, is that they were appointed by the recorder on the 1st of August, 1899, at an annual salary of one thousand dollars a year, each, under the provisions of Act No. 114 of the Acts of 1894, amending and re-enacting Section 47 of Act No. 20 of 1882, known as the charter of the City of New Orleans.
Two statutes were enacted by the General Assembly after the passage of Act No. 114 of 1894, the first being Act No. 45 of 1896, known ás the charter of New Orleans, and Act No. 84 of 1898, entitled “An *1643 Act to amend and re-enact Sections 68, 69, 70 and 71 of Act No. 45 of 1896, entitled 'An Act to incorporate the Oity of New Orleans, provide for the government and administration of the affairs thereof, and to repeal all acts inconsistent or in conflict therewith.’ ”
By the 35th Section of Act No. 20 of 1882 (the charter of the Oity of New Orleans of that year), four police courts wore created in the city to be known as the First, Second, Third and Fourth Recorder’s Courts.
The Fourth Recorder’s Court was given jurisdiction in the territory known as the Fifth Municipal District or Algiers.
The recorder was allowed a clerk at a salary of one thousand dollars a year, and an assistant clerk at a salary of six hundred dollars a year. They were to be appointed and removed by the recorder.
In 1884 the General Assembly enacted Act No. 90 of 1884, entitled “An Act to amend and re-enact Section 47 of Act No'. 20 of 1882, entitled, 'An Act to incorporate the Oity of New Orleans, provide for the government and administration of the affairs thereof, and to repeal all acts inconsistent and in conflict therewith.’ ”
By the first section of this new act, the 47th Section of Act No. 20 of 1882 was amended, among other matters, by allowing the Recorder of the Fourth Section a clerk at a salary of twelve hundred dollars a year, and an assistant clerk at a salary of one thousand dollars a year.
The clerks to be appointed and removed at the will of the recorder.
The Governor of Louisiana, on July 12th, 1894, approved Act No. 154, of 1894, entitled “An Act to provide for a Recorder’s Court in the Third Municipal District of the City of New Orleans, and for the appointment of a recorder for said court until the next general election, and' to amend and re-enact Sections 45, 46 and 47 of Act No. 20 of 1882, entitled 'An Act to incorporate the City of New Orleans, provide for the government andi administration of the affairs thereof, and to repeal all acts inconsistent and ’in conflict with its provisions.’ ”
The fourth section of the Act of 1882 was made in the first section of Act No. 154 to read that, “there shall be six police courts in the City of New Orleans, to be known as the First, 'Second, Third, Fourth, Fifth and Sixth Recorders’ Courts.”
The Fourtjh Recorder’s Court remained unchanged as to its jurisdiction; its jurisdiction extending over the Fifth Municipal District-known as Algiers.
*1644 The recorder of the Fourth Recorder’s Court was allowed a clerk at a Salary of twelve hundred dollars a year, and an assistant clerk at a salary of one thousand dollars a year. The clerks to be appointed and removed by the recorder.
On the same day (July 12, 1894,) that the Governor approved Act No. 154, he approved Act No. 174 of the General Assembly, entitled “An Act to amend and re-enact Act No. 90 of 1884, to amend and reenact Section No. 47 of Act No. 20 of 1882, entitled 'An Act to incorporate the City of New Orleans, provide for the government and administration of the ,affairs thereof, and to repejnl all acts inconsistent and in conflict with its provisions,’ ” by providing fox a testimony clerk, who should be a stenographer, for the Fourth Recorder’s Court of the City of New Orleans.
The first section of this Act No. 174, of 1894, enacted that the 47th section of Act No. 90, of 1884, be amended and re-enacted.
The amendment consisted in. declaring that the recorder of the Fourth Recorder’s Court should be allowed a testimony clerk at a salary of one thousand dollars, which testimony clerk should be a stenographer.
The clerks were to be appointed and removed by the recorder.
In 1896 a new charter was given to the City of New Orleans under Act No. 45 of that year, entitled “An Act to incorporate the City of New Orleans, provide for ihe government and administration of the ajffairs thereof, and to repeal all acts inconsistent or in conflict therewith.”
Sections 68, 69, 70, 71, 72, 73, 74 and 75 of the act dealt with the subject of “Recorders’ Courts.”
The 68th section declared that there should be four police courts in the City of New Orleans, to be known as the First, Secpnd, Third and Fourth Recorders’ Courts. That the First Recorder’s Court should have jurisdiction of that territory known as the First and Fourth Municipal Districts; the Second Recorder’s Court of the Second and Third Municipal Districts; the Third Recorder’s Court of the Sixth and Seventh Municipal Districts, and the Fourth Recorder’s Court of the Fifth Municipal District (Algiers).
By the 69th section of the act the Fourth Recorder was allowed a clerk at a salary of twelve hundred dollars a year, and one testimony clerk, who should be a competent stenographer, at one ¡thousand dollars *1645 a year. The clerks to be appointed and removed by the recorders at pleasure.
Section 122 of this act, being the first section of its schedule, declared that the act should take effect in all respects after due promulgation as provided by law; except that the various municipal officers and councilmen, electee^, at the general election held April 21st, 1896, should continue in office until the expiration of the term for which they were elected, and until their successors should be duly qualified.
The 124th section declared that the first election under this charter should bo held on the Tuesday next following the third Monday in April, 1900, and the 125th section that all laws or parts of laws in conflict or inconsistent with the provision of the new act were thereby repealed.
Article 141, of the Constitution of 1898, ordered that “the General Assembly should provide for Recorder’s Courts in the City of New Orleans to be presided over by magistrates who need not be attorneys at law, but such courts should (shall) have no jurisdiction except for trial of offenses against city ordinances.”
On July 12th, 1898, the Governor of Louisiana approved Act No. 84 of that year, entitled “An Act to amend and re-enact sections 68, 69, 70 and 71, of No. 45 of 1896, entitled 'An Act to incorporate the City of New Orleans, provide for the government and administration thereof, and to repeal all acts inconsistent or in conflict therewith.’ ”
By the first section of this new act, Section 68 of Act No. 45 of 1896 was amended and re-enacted so as to provide that there should be four police courts in the City of New Orleans, to be known as the First, Second, Third and Fourth Recorder’s Courts. The First Recorder’s Court was given jurisdiction over the First and Fourth Municipal Districts; the Second Recorder’s Court over the Second and Third Municipal Districts; the Third Recorder’s Court over the Fifth Municipal District (Algiers), and the Fourth Recorder’s Court over the Sixth and Sevdnth Municipal Districts.
It will be perceived that under this law the name of the court having jurisdiction over the Fifth Municipal District was changed from the Fourth Recorder’s Court to the Third Recorder’s Court.
The recorder of the Third Recorder’s Court (formerly the Fourth Recorder’s Court) was allowed one clerk at twelve hundred dollars a *1646 year, who should be a competent stenographer, to be appointed and removed by the recorder at pleasure.
In the budget of the city for 1899 provision is maide for the different Recorders’ Courts, under the heading:
Recorders’ Courts. Acts 84 of 1898, page 109.
The recorder for the Algiers District is provided for as follows under the heading:
Fourth Recorder (Algiers) for four months.
19 — ITis salary...........................................$665 65
20 — One clerk at $100.................................... 400 00
21 — One janitor and porter.............................. 240 00

For Eight Months.

22 — His salary .........................................$1200 00
23 — One clerk at $150................................... 665 65
24 — One porter and janitor............................... 266 65
In the' budget for 1900 provision is made for the different Recorders’ Courts under the heading of:

Recorders‘ Courts.

The recorder for the Algiers District is provided for as follows, under the heading of “Fourth Recorder,” “Algiers.”
15 — His salary .........................................$2000 00
16 — One clerk ......................................... 1200 00
17 — One clerk.......................................... 1000 00
18 — One stenographer .................................. 1000 00
19 — One porter......................................... 520 00
Opinion.
Appellants in their pleadings do not object to the budget for 1899. They say that it Was made out according to law, and their complaint as to that year is that they have not been paid in conformity to it. An inspection of that budget will show that only one clerk was budgeted for for the Recorders’ Court for Algiers, for the year 1899, and it was *1647 admitted oil the hearing that there was a clerk in the office other than relators who had drawn his pay for 1899. There is no prayer made in plaintiff’s petition for. an alteration in the budget of 1899.
Plaintiffs complain, on the other hand, that no provision was made for the payment of their services in the budget for 1900, but we find that provision was made therein for two clerks, one stenographer and a porter. There is no ground, therefore, for altering that budget.
Plaintiff’s’ contention, that they were appointed to their positions on the 1st of August, 1899, under Act No. 174 of 1894, is without foundation. The Act No. 36 of 1896, the new charter of the city, superseded prior acts relative to the clerkships in the Recorders’ Courts in New Orleans. It is a mistake for relators to suppose that the clause in the schedule of the charter of 1896, continuing in office the various municipal officers and eouncilmen elected at the general election, held on April 21st, 1896, should continue in office until the expiration of the term for which they were elected, and until their successors were duly qualified, has a bearing in any way upon the continuance in office of the clerks in the Recorders’ Courts. They were not elected in April, 1896, but were appointed by the recorders and subject to removal at any time by them.
The extent of the clerical force in the office of the Recorder’s Court for the Algiers District, in 1899, has to be tested either by the Act No. 4of 1896, oir Act No. 84 of 1898, and relator’s rights have to be measured by one or the other of those acts. (Peters vs. Bell, 51 Ann., 1625).
Under the act of 1896 the recorder of that court was entitled to appoint one clerk at a salary of twelve hundred dollars a year, and one testimony clerk, who should be a stenographer, at one thousand dollars a year, while under Act No. 84 of 1898, he was only entitled to appoint one clerk, who should bo a stenographer and should act as stenographer.
Assuming, as a fact, that the Recorder’s Courts referred to in Act No. 84 of 1898, were intended by the General Assembly to be new courts created under Article No. 141 of the Constitution, and the provisions of that act intended to take effect only after April, 1900, and then simultaneously in their entirety, the effect of which assumption would be to extend the provisions of the Act of 1896 as to the Recorders’ Courts up to April, 1900, it would be impossible for the court, under the pleadings and the evidence, to give relief to either of the relators.
*1648 It is clear that the recorder would be entitled, at most, to two clerks; he had three, and one of them has been paid already.
Conceding that one of the x>laintiffs may have rights in the promises, it is clear that the other has none, and there is nothing in the evidence from which we could ascertain which of the plaintiffs would be the one appointed without authority.
Independently of this we have seen that the budget for 1899 budgeted for only one clerk; that that amount has already been paid out and that there is no prayer in the petition for any change in the budget of that year.
We notice in section 30 of the charter of 1896 that the comptroller is prohibited from warranting upon the treasurer for the payment of any bill, requisition, pay roll or demand, of whatever nature, without the same has been certified in writing as correct and due by the officer or board by whom or under whose authority the same was contracted, and also by the chairman of the Finance Committee of the Council, and until he shall have carefully examined and computed such claim.
The acts which relators seek to have performed are successive steps taken by different officials in the performance of their respective duties as matters reach them under the conditions upon which they are called on to act, and it should be alleged and shown on an application for a mandamus against these different officers, in respect to the performance of a particular duty, that the subject matter had been presented to them under the conditions which called for their action; that they had then been called on to perform it and had refused to do so.
We could not mandamus, for instance, the comptroller to issue his warrant until bills, properly certified, had been presented to him and he refused to warrant, or mandamus the treasurer to pay any one in the absence of the presentation to him of a proper warrant and a subsequent refusal on his part.
We take occasion to say th|at the position taken by the defendants in the answer, that the City Council and its officers are warranted in not budgeting for employees whom the recorders are authorized by law to appoint, because, in their opinion, there is no need of their services and the positions are sinecures, is totally untenable.
When the Legislature has granted to a recorder the right of appointing a certain number of clerks at a certain salary, and he has exercised the right granted him, the Council is without authority to raise an *1649 issue with the recorder or the employees as to the propriety of or the necessity of the appointments.
So, also, when a recorder is granted the right to appoint a certain number of clerks at a¡ given salary a year, subject to removal by him, and thei recorder calls upon the Council to budget for that number, and for that amount for the ensuing year, it is the duty of the Council to budget accordingly.
It has no right to assume that the amount called for would not be needed, because the power of removal might be exercised, and on the strength of that assumption either to refuse to budget or to cut down the amount called for by the law and the recorder.
As matters are brought before us, we have no alternative but-to affirm the judgment, at relators’ costs, reserving them the right to enforce in other proceedings whatever legal rights they may be entitled to.
Rehearing refused.